| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>v.<br><br>ARTEMIO FRANCISCO JERONIMO-PABLO,<br><br>         Defendant. | Case No.: 3:20-mj-20066-AHG<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO DISMISS;**<br><br>**(2) DENYING MOTION TO PRESERVE EVIDENCE;**<br><br>**(3) GRANTING MOTION TO COMPEL DISCOVERY;**<br><br>**(4) DEFERRING MOTION TO SUPPRESS STATEMENTS; and**<br><br>**(5) GRANTING MOTION FOR LEAVE TO FILE FURTHER MOTIONS**<br><br>**[ECF NO. 20]** |

Before the Court are Defendant Artemio Francisco Jeronimo-Pablo's consolidated motions to: (1) dismiss the complaint; (2) preserve evidence; (3) compel discovery; (4) suppress statements; and (5) grant leave to file further motions. ECF No. 20. The Court took the matters raised in the Motion under submission after oral argument on July 9, 2020. ECF No. 32. Having considered the parties' papers and their argument, the Court enters the following Order:

## I.    BACKGROUND

Defendant is charged with violating 8 U.S.C. § 1325(a)(1), which provides, in relevant part, that "[a]ny alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers . . . shall [be guilty of a misdemeanor]." *See* ECF No. 1. The Government alleges that on January 8, 2020, a United States Customs and Border Protection ("Border Patrol") agent encountered Defendant trying to hide in an area approximately eighteen miles east of the Tecate, California Port of Entry and approximately three miles north of the United States/Mexico International Boundary. *Id.* at 2. The Government alleges that during administrative processing, Defendant stated that he entered the United States on January 8, 2020. *Id.*

Defendant's case proceeded under the "Streamline" process, which the Department of Justice uses to manage prosecution of misdemeanor charges brought under 8 U.S.C. § 1325. *See United States v. Chavez-Diaz*, No. 18MJ20098 AJB, 2018 WL 9543024, at *1–2 (S.D. Cal. Oct. 30, 2018) (describing the Department of Justice's "Operation Streamline" process, as implemented by the Government in this Court), *rev'd on other grounds*, No. 18-50391, 2020 WL 562292 (9th Cir. Feb. 5, 2020). On January 9, 2020, Defendant was brought to Court for his initial appearance. ECF No. 3. Defendant met with an attorney on the ground floor of the Federal Building that morning before his appearance. ECF No. 20-1 at 2. Defendant was shackled at his legs during that meeting. *Id.* At his initial appearance, the Court arraigned Defendant, appointed Federal Defenders to represent him, and ordered that Defendant be detained. *Id.* The Court granted Defendant's motion for reconsideration of bond on January 15, 2020, and Defendant was released on bond on

January 24, 2020. ECF Nos. 10, 16.

On February 25, 2020, defendant filed the consolidated motion currently before the Court, seeking various forms of relief, including dismissal of the complaint. ECF No. 16. In addition to seeking dismissal of the Complaint, Defendant moves the Court to: (1) preserve evidence; (2) compel discovery; (3) suppress statements; and (4) grant leave to file further motions. *Id.* The Court will address the Motion to Dismiss before turning to the other motions.

## II.   DISCUSSION

### A. Motion to Dismiss

Defendant moves to dismiss the Complaint on seven grounds: (1) the "Streamline" process violates equal protection; (2) the prosecution of Defendant violates principles of selective prosecution and selective enforcement; (3) the prosecution of Defendant violates procedural and substantive due process; (4) Congress violated the non-delegation doctrine when it enacted § 1325(a)(1); (5) Congress violated the Due Process Clause's prohibition on vague laws when it enacted § 1325(a)(1); (6) the Complaint fails to allege all the elements of the charged offense; and (7) § 1325 is unconstitutional.

The Court addresses each of Defendant's arguments below.

#### 1.   Challenges to Streamline Process

Defendant argues that the Government's use of the "Streamline" process to prosecute him, rather than through the Central Violations Bureau ("CVB"), violates the Equal Protection Clause. As described in Defendant's Motion, the CVB process is used to prosecute violations of certain federal laws, and violations of certain state laws that occur on federal property. *See* ECF No. 20-1 at 6-8. Defendants who are prosecuted through the CVB are rarely detained for more than a few hours. They receive a notice to appear instead. At their initial appearance, they have the opportunity to meet with an attorney who can help them negotiate a disposition. CVB defendants are also typically able to avoid any appearance through payment of a fine. Defendant argues that the Government discriminated against him and denied him due process by not allowing him to "take

advantage of the substantial benefits of CVB court," even though his offense was less serious than other charges handled through CVB. *Id.* at 8-9.

Because they are punishable by no more than six months, § 1325 offenses are classified as Class B misdemeanors and are considered "petty offenses" under federal law. See 18 U.S.C. §§ 19, 3559(a)(7). Other petty offenses, as well as some felonies, are prosecuted through CVB. *See, e.g.*, ECF No. 20-2, Ex. G (reflecting the CVB docket sheet for October 10, 2018). Thus, Defendant argues that by prosecuting § 1325 offenses through the Streamline process rather than through CVB, the Government is treating similarly situated defendants differently on the basis of alienage, in violation of the Equal Protection Clause.

The Equal Protection Clause is part of the Fourteenth Amendment, and states in relevant part that the government shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. A threshold issue on which the parties disagree is the standard of review that applies. The Court agrees with multiple judges in this district who have concluded that § 1325 does not create a classification based on alienage that would invoke strict scrutiny. *See, e.g.*, *United States v. Ramirez-Ortiz*, 370 F. Supp. 3d 1151, 1154 (S.D. Cal. 2019); *United States v. Silva-Sosa*, No. 18MJ23270-KSC, 2019 WL 1470868, at *2–3 (S.D. Cal. Apr. 3, 2019); *United States v. Mazariegos-Ramirez*, No. 18MJ22276-WQH, 2019 WL 338923, at *2 (S.D. Cal. Jan. 28, 2019); *Chavez-Diaz*, 2018 WL 9543024, at *3.[1] The Government's decision to bring § 1325 charges using the Streamline process creates a distinction among defendants based on their

---

[1] *Chavez-Diaz* was reversed by the Ninth Circuit on February 5, 2020 because the Court of Appeals found that the defendant had waived his right to bring his constitutional challenges on appeal by entering an unconditional guilty plea, while the district court had found no waiver and considered the constitutional challenges on their merits. *See Chavez-Diaz*, No. 18-50391, 2020 WL 562292, at *2-6 (9th Cir. Feb. 5, 2020). Therefore, the Ninth Circuit opinion reversing the district court does not address the merits analysis, much less contradict it.

alleged criminal activity (attempting to enter or entering the United States unlawfully), not based on alienage. That is, rather than creating a separate court for processing alien defendants with respect to *any* criminal charges brought against them, the Streamline process is only used with respect to charges brought based on alleged unlawful entry in violation of § 1325. *See Ramirez-Ortiz*, 370 F. Supp. 3d at 1154 (quoting *United States v. Mendoza-Hinojosa*, 216 F.3d 1085, 2000 WL 429701, at *2 (9th Cir. 2000) (unpublished table case) for the dual proposition that there exists a "distinction between statutes which classify based on alienage and statutes which classify based on criminal actions" and that "imposing different rules on immigrants versus citizens does not in itself create a suspect classification").

Moreover, the Supreme Court has recognized that Congressional acts regarding immigration are "subject only to narrow judicial review." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (citation omitted). In *Fiallo*, the Supreme Court recognized that "in the exercise of its broad power over immigration and naturalization, 'Congress regularly makes rules that would be unacceptable if applied to citizens.'" *Id.* (quoting *Mathews v. Diaz*, 426 U.S. 67, 80 (1976)). Even if the Streamline process has a disparate impact on aliens, therefore, it would not be subject to strict scrutiny. *See also United States v. Barajas-Guillen*, 632 F.2d 749, (9th Cir. 1980) ("[C]lassifications among aliens made pursuant to the immigration laws need only be supported by some rational basis to fulfill equal protection guarantees.").

Applying the rational basis test, the Court finds that the Streamline process readily meets this standard. Although the Equal Protection Clause requires all similarly situated persons to be treated alike, "so too, 'the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.'" *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (internal alteration and citation omitted). "Undocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.'" *Id.* at 223. In analyzing whether the Government's processing of § 1325 defendants through the Streamline process rather than CVB survives rational basis review, the question is whether "the classification at issue

bears some fair relationship to a legitimate public purpose." *Hoffman v. United States*, 767 F.2d 1431, 1436 (9th Cir. 1985) (quoting *Plyler*, 457 U.S. at 216).

The Government's proffered reasons for finding Defendant's § 1325 offense unsuitable for disposition through the CVB include: 1) The CVB is "a national center charged with processing violation notices (tickets) issued and payments received for petty offenses committed on federal property[,]" and thus a criminal misdemeanor offense under Title 8 of the United States Code is not the type of offense for which the CVB calendar was designed, ECF No. 21 at 5 (quoting Central Violations Bureau, www.cvb.uscourts.gov); and 2) since Defendant was arrested for his alleged offense rather than being given a violation notice, Rule 5 of the Federal Rules of Criminal Procedure entitled Defendant to be taken "without unnecessary delay" before a magistrate judge following his arrest, making it impossible to route his case to the CVB for processing. *Id.* at 14; Fed. R. Crim. P. 5(a)(1)(A). Each of these reasons for processing § 1325 defendants differently than other defendants accused of federal "petty offenses" satisfies the rational basis standard of review.

In finding the test met, the Court here adopts Judge Anthony J. Battaglia's detailed explanation and persuasive reasoning on the same question in *Chavez-Diaz*, 2018 WL 9543024, at *1–4. In addition, the Court notes that requiring the Government to process § 1325 defendants through the CVB would likely prove unworkable given the nature of the charge: unlawful entry into the United States by an alien. As Defendant notes, CVB defendants are not taken into custody. They are allowed to continue living in the United States without restriction, and typically given the option to either pay a fine or appear at a hearing. That would not be a manageable way to address individuals whose alleged offense is entering the United States without authorization.

In his Motion, Defendant preemptively anticipates and rejects that the Government may prosecute § 1325 defendants outside of CVB due to a concern that they are less likely to show up for court. *See* ECF No. 20-1 at 8. Defendant provides an exhibit purportedly demonstrating that § 1325 defendants are more likely to show up for court than CVB

defendants. *Id.*; ECF No. 20-2, Ex. H. However, Defendant's comparison of non-appearances at court hearings by § 1325 defendants and CVB defendants is inapt. The rate of non-appearance by § 1325 defendants only reflects those § 1325 defendants who have secured pretrial release through bail or other conditions. In each of those defendants' cases, a magistrate judge has reviewed their individual circumstances and determined under the Bail Reform Act that conditions of pretrial release can be set to mitigate any flight risk. Nonetheless, a significant percentage of those defendants charged under § 1325 do not appear. The non-appearance rate of that subset of § 1325 defendants does not reflect, nor does it predict, what the non-appearance rate would be if all § 1325 defendants were given notices to appear instead of being detained, as is the case for CVB defendants. Moreover, as discussed above, the Government offers reasons other than the risk of non-appearance for prosecuting § 1325 defendants outside of CVB, and those reasons meet rational basis review on their own.

Defendant also argues that the Streamline process violates the Equal Protection Clause because it is motivated by invidious racial discrimination, as evidenced by various statements made by President Donald Trump. ECF No. 20-1 at 10-11. Because prosecution of § 1325 defendants relates to the entry of foreign nationals, however, the Court's review with respect to President Trump's statements is limited to whether the Streamline process is otherwise "facially legitimate and bona fide." *Trump v. Hawaii*, 138 S. Ct. 2392, 2419-20 (2018). This standard is also met for the reasons discussed above and at length in *Chavez-Diaz*. 2018 WL 9543024, at *1-4. Similar Streamline processes were already in effect in border districts in Arizona and Texas prior to President Trump's election, negating any suggestion that the Streamline process is based on President Trump's statements.

Therefore, the Court denies Defendant's motion to dismiss on the grounds that the Government's use of the Streamline process violates the Equal Protection Clause.

### 2. Selective Prosecution and Selective Enforcement

Defendant argues that his prosecution under the Streamline process violates the prohibition on selective prosecution and selective enforcement. "A selective-prosecution

claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). The standard for proving a claim of selective prosecution is demanding. *Id.* The executive branch, through the Attorney General and United States Attorneys, has wide discretion in enforcing criminal laws. *Id.* at 464. As long as there is probable cause to support a prosecution, "whether or not to prosecute, and what charge to file or bring before a grand jury," falls squarely within the prosecutor's discretion. *Id.*; *see also United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.").

Defendant does not argue that the fact he was charged under § 1325 reflects selective prosecution. Instead, he argues that the manner in which his charge was processed reflects selective prosecution. It is not clear that the manner of processing, rather than the fact of prosecution, can be the basis of a claim for selective prosecution. Nonetheless, Defendant has not produced any evidence that the § 1325 prosecutions of any similarly situated individuals were processed using any method other than Streamline. CVB defendants and § 1325 defendants are not similarly situated merely because their offenses carry comparable punishments. As discussed above, alienage is an element of § 1325, and the statute passes constitutional muster due to Congress's "broad power over immigration and naturalization." *Fiallo*, 430 U.S. at 792.

Defendant's claim that the charge should be dismissed because of selective enforcement also fails. A selective enforcement claim focuses on the investigatory decisions of government agencies, such as the United States Customs and Border Patrol. *United States v. Sellers*, 906 F.3d 848, 853 (9th Cir. 2018). Although investigatory decisions of agencies are not entitled to the same deference as prosecutorial decisions by the Attorney General or United States Attorneys, *id.*, Defendant's selective enforcement claim relates solely to how the charge brought against him by the United States Attorney's office was processed. Defendant's claim is not related to any investigatory activity by the

Border Patrol or any other federal agency preceding the charge. The Government's use of the Streamline process does not amount to improper selective prosecution or enforcement.

Therefore, the Court denies Defendant's motion to dismiss on the grounds that Defendant's prosecution violates the principles of selective prosecution and selective enforcement.

### 3. Violation of Procedural and Substantive Due Process

Defendant argues that his prosecution violates substantive due process because it shocks the conscience to deprive § 1325 defendants of the benefits of the CVB process. The Court disagrees. Defendant's arrest and detention were supported by a showing of probable cause, which was reviewed and approved by a magistrate judge. Following his detention, Defendant was brought to the federal building, where he met with an attorney. A magistrate judge appointed counsel to represent him and granted his motion for reconsideration of bond. None of these procedures shocks the conscience.

Defendant's claim that his right to procedural due process was violated also fails. A procedural due process analysis considers three factors: 1) the "private interest that will be affected by the official action;" 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Without more specific information concerning Defendant's arrest and detention, the Court cannot take at face value Defendant's contention that the individual interest at stake is "substantial" due to the "traumatizing experience of being held in custody in substandard conditions, and an overwhelmingly greater chance of being convicted of an offense." ECF No. 20-1 at 16. To be sure, the liberty interest that is implicated when an individual is detained by the Government is substantial. But that interest must be weighed against the Government's interest, and as discussed above, the Government has put forth legitimate reasons why processing § 1325 defendants through the substitute process of the CVB

would not be practicable. Further, the procedures that have been put into place through the Streamline process adequately protect against the risk of an erroneous deprivation of that interest. Those procedures include a probable cause review to support detention, appointment of counsel, and consideration of pretrial release conditions under the Bail Reform Act. Therefore, Defendant's procedural due process claim does not establish a constitutional violation under the *Mathews* balancing test.

Therefore, the Court denies Defendant's motion to dismiss on the grounds that Defendant's prosecution violates the Due Process Clause.

### 4.   Violation of the Non-Delegation Doctrine

Defendant argues that the § 1325 charge against him should be dismissed under the non-delegation doctrine because Congress delegated its core legislative functions to the Executive Branch by allowing "immigration officers" to determine the times and places when an alien can lawfully enter the United States. *See* 8 U.S.C. § 1325(a) (defining as one of three alternative elements of the offense the entry or attempted entry into the United States "at any time or place other than as designated by immigration officers"). The non-delegation doctrine generally forbids Congress from transferring "powers which are strictly and exclusively legislative" to other branches of government. *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (citation omitted). Defendant claims that immigration officials have unfettered discretion to designate times and places for entry on an *ad hoc* basis, and that the statute does not provide any intelligible principle to guide this discretion.

"In our increasingly complex society, replete with ever changing and more technical problems, [the Supreme] Court has understood that Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Gundy*, 139 S. Ct. at 2123 (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)) (internal alteration and quotations omitted). Therefore, as long as "Congress has supplied an intelligible principle to guide the delegee's use of discretion[,]" a statute does not run afoul of the non-delegation doctrine. In performing the analysis of whether such an "intelligible principle" is supplied, the Court must "constru[e] the challenged statute to figure out what task it delegates and

what instructions it provides." *Gundy*, 139 S. Ct. at 2123. Importantly, that task of construction does not require the Court to look only at the text of the statute "in isolation." Rather, the intelligibility of the standards that guide the delegee's discretion must be considered in light of "the purpose of the [statute at issue], its factual background, and the statutory context in which they appear." *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 104 (1946).

Construing § 1325 in *United States v. Nunez-Soberanis*, 406 F. Supp. 3d 835 (S.D. Cal. 2019) (Dembin, J.), another court in this District rejected the same non-delegation argument Defendant presents here, reasoning as follows:

> Defendant attempts to read into the statute a broader delegation than actually occurred by arguing that any individual immigration official can designate any piece of land as a place for entry. Not so. Congress requires that aliens seeking lawful entrance to the United States do so at a port of entry. *See United States v. Corrales-Vasquez*, 931 F.3d 944, 946 (9th Cir. 2019); *United States v. Aldana*, 878 F.3d 877, 882 (9th Cir. 2017). Ports of entry can only be designated or de-designated by the Secretary of Homeland Security subject to the Administrative Procedures Act. *See* 8 CFR § 100.4(a). Ports of entry also necessarily include facilities, staffed by immigration officials that are set up to accept applications for admission. *Aldana*, 878 F.3d at 882. To interpret Section 1325(a) to permit a border patrol agent to designate a portion of the border fence "on a whim" is in direct conflict with Congress's clear statutory scheme.

*Id.* at 839-40. This Court agrees. Contrary to Defendant's argument, when viewed in the proper context rather than viewing the statutory text in isolation, § 1325's delegation to immigration officers to designate time and place of lawful entry is not unfettered, but significantly constrained. *Am. Power*, 329 U.S. at 104; *see also Gundy*, 139 S. Ct. at 2123-24 (considering the text of a statute "alongside its context, purpose, and history" to determine the extent of discretion afforded to the delegee in question).

Congress's delegation of the duty to designate the time and place for lawful entry of aliens also does not expand the scope of criminal liability under § 1325. Opening or closing ports of entry does not change or expand the conduct that leads to criminal liability under

§ 1325. Closing ports or restricting hours of operation may make it more cumbersome for aliens to enter legally, but it does not create new or different criminal liability.

Therefore, the Court denies Defendant's motion to dismiss on the grounds that § 1325 violates the non-delegation doctrine.

### 5. Vagueness

Defendant argues the charge against him should be dismissed because 8 U.S.C. § 1325 is void for vagueness. A statute can be impermissibly vague in either of two circumstances: 1) the statute "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits;" or 2) the statute "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Defendant argues that § 1325 is impermissibly vague because it permits immigration officers unlimited discretion to decide what places to designate for lawful entry. As discussed above, this is not correct. Individual Border Patrol agents cannot designate ports of entry on a whim. Closing a port of entry temporarily is not synonymous with "de-designating" it as a port of entry. Section 1325 clearly delineates the conduct that it prescribes and is not impermissibly vague.

Therefore, the Court denies Defendant's motion to dismiss on the grounds that § 1325 is impermissibly vague.

### 6. Failure to Allege the Elements of § 1325(a)(1)

Defendant argues that the charge should be dismissed because the Government failed to allege that Defendant knew he was an alien when he attempted to enter the United States.

The Court disagrees that knowledge of alienage is required under § 1325. Defendant relies in part on *Rehaif v. United States*, 139 S. Ct. 2191 (2019) to make this argument. *Rehaif*, however, is distinguishable. In *Rehaif*, the Supreme Court held that a defendant can be convicted of possession of a firearm by an alien who is illegally or unlawfully present in the United States under 18 U.S.C. § 922(g) only if the Government shows that the defendant knew of his illegal or unlawful immigration status. *Rehaif*, 139 S. Ct. at 2196.

The Court's interpretation of § 922(g) was governed by the overall statutory scheme, which includes 18 U.S.C. § 924(a)(2). Section 924(a)(2) expressly provides for punishment of a defendant who "knowingly violates" § 922(g). *See Rehaif*, 139 S. Ct. at 2194. There is no similar express requirement in § 1325, however, that a violation be "knowing."

*Rehaif* does address the general standard for interpreting the *mens rea* requirement for an element of a criminal statute. *Id.* at 2195. The "longstanding presumption" is that "Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" *Id.* (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)). However, unlike the statute at issue in *Rehaif*, the element of alienage in a § 1325 charge does not criminalize "otherwise innocent conduct." *See Nunez-Soberanis*, 406 F. Supp. 3d at 843-45. The conduct that § 1325 criminalizes is attempting to cross the border outside the port of entry, free from official restraint. *See, e.g.*, *United States v. Argueta-Rosales*, 819 F.3d 1149, 1151 (9th Cir. 2016); *United States v. Lombero-Valdovinos*, 429 F.3d 927, 928-29 (9th Cir. 2005). Any person, whether a United States citizen or an alien, who engages in such conduct violates the laws of the United States. *Nunez-Soberanis*, 406 F. Supp. 3d. at 844 (citing 19 U.S.C. § 1459(a)). Therefore, the Government does not need to prove that a defendant knew he or she was an alien to obtain a conviction for violating § 1325(a)(1).

Defendant also argues that a defendant who believes he or she is a United States citizen at the time of the alleged offense cannot be found guilty of a violation of § 1325(a)(1) because "'a defendant should be treated in accordance with the facts as he supposed them to be,' not as they actually are." ECF No. 20-1 at 25 (quoting *United States v. Quijada*, 588 F.2d 1253, 1255 (9th Cir. 1978)). *Quijada* does not stretch as far as Defendant would like. The issue in *Quijada* was whether the defendant, who had the intent to distribute cocaine, could avoid conviction because the substance he distributed was not in fact cocaine. *Id.* at 1255. A defendant can be convicted of attempted illegal entry under § 1325 if he or she has the specific intent to enter the country free from official restraint. *Lombera-Valdovinos*, 429 F.3d at 929. *Quijada* cannot plausibly be read to hold that a

defendant could avoid conviction under § 1325 when he or she had the specific intent to enter the country free from official restraint, merely because the defendant had a mistaken belief that he or she was not an alien at the time of the offense.

Therefore, the Court denies Defendant's motion to dismiss on the grounds that the Government failed to allege all elements of § 1325.

### 7. Violation of the Equal Protection Clause under *Sessions v. Morales-Santana*

Defendant argues that § 1325 is unconstitutional following the U.S. Supreme Court's opinion in *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686, 1700-01 (2017). In *Morales-Santana*, the Supreme Court held that the gender-based distinctions for derivative citizenship in 8 U.S.C. §§ 1401(a)(7) and 1409 (a) and (c) are unconstitutional because they violate the Equal Protection Clause. *Morales-Santana*, 137 S. Ct. at 1698, 1700-01. In *United States v. Madero-Diaz*, 752 F. App'x 537 (9th Cir. 2019), the Ninth Circuit declined to extend *Morales-Santana* to the definition of "alien" that applies to § 1325. *Id.* at 538. This Court does not have the authority or inclination to overrule the Ninth Circuit Court of Appeals on this issue.

Therefore, the Court denies Defendant's motion to dismiss based on the alleged unconstitutionality of § 1325 under *Sessions v. Morales-Santana*.

### B. Motion to Preserve Evidence

Defendant asks the Court for an order compelling the Government to preserve evidence, but does not identify any specific evidence to include in such an order. In its opposition, the Government represents that it has complied with its discovery obligations. Because Defendant has not shown that there is a need for a court order on preservation, the Court denies Defendant's motion to preserve evidence without prejudice.

### C. Motion to Compel Discovery

Defendant asks the Court to compel several categories of information in discovery. In its opposition, the Government represents that it has complied with its discovery obligations. At the hearing on the motions, there were two outstanding issues regarding

discovery. The Court will grant Defendant's motion to compel as to these issues.

First, the Government is required to disclose to Defendant no later than August 14, 2020, whether there are or were any recordings from surveillance leading up to and including Defendant's arrest. If there are any such recordings, they must be produced to Defendant no later than August 14, 2020. If any such recordings have been destroyed and are no longer available for production, the Government must advise the Defendant of that no later than August 14, 2020.

Second, the Government is required to disclose any information regarding arresting or testifying officers' membership in the Facebook "I'm 10-15" group no later than August 14, 2020. This includes the fact of membership and any activity by the officer within the group, including posts, comments, or likes.

The Court therefore grants Defendant's motion to compel as to these two categories of information.

### D. Motion to Suppress Statements

Defendant argues that statements made prior to, during, and after his arrest should be suppressed. Because it is not clear what statements made by Defendant, if any, the Government intends to introduce at trial, the Court defers this motion until trial.

### E. Motion for Leave to File Further Motions

Defendant seeks the Court's approval to file further motions. The Court grants leave to file up to one additional motion, subject to the page limits set forth in CrimLR 47.1.e, no later than August 10, 2020.

///
///
///
///
///
///
///
///

### III. CONCLUSION

For the reasons set forth above, the Court: (1) **DENIES** Defendant's Motion to Dismiss the Complaint; (2) **DENIES** Defendant's Motion to Preserve Evidence, without prejudice; (3) **GRANTS** Defendant's Motion to Compel Discovery; (4) **DEFERS** ruling on Defendant's motion to suppress statements; and (4) **GRANTS** Defendant leave to file one further motion.

**IT IS SO ORDERED.**

Dated: August 5, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge